UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

-vs-

D-1   HAMEED ALZEYADY and
D-2   JABAR AL-ZAYADI,

Defendants.

_____/

Case:2:14-cr-20223
Judge: Friedman, Bernard A.
MJ: Whalen, R. Steven
Filed: 04-10-2014 At 04:36 PM
INDICTMENT HAMEED ALZEYADY, ET AL (
DP)

VIO:  18 U.S.C. § 1343
       7 U.S.C. § 2024(b)

# INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

### The Federal Food Stamp Program

1. The federal Food Stamp Program (FSP) is a program designed

to raise the level of nutrition of low-income households.  The FSP is

funded by the United States Department of Agriculture (USDA) and

largely administered in Michigan by the Michigan Department of

Human Services (Michigan DHS) (formerly known as the Michigan Family Independence Agency). The FSP is governed by federal statutes and regulations. The FSP is now called the Supplemental Nutrition Assistance Program, or SNAP. Nevertheless, for purposes of clarity, the program will be referred to in this Indictment as the FSP.

2. Both low-income households and retail food stores must meet certain eligibility criteria before they can participate in the FSP.

3. Eligible recipients of food stamp benefits may use those benefits solely for the purchase of eligible food items, which include any food or food products intended for consumption at home.

4. Eligible retail food stores may accept food stamp benefits only as payment for eligible food items. Such stores may not accept food stamp benefits in exchange for such ineligible items as alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption. Nor may such stores accept food stamp benefits in exchange for cash. Nor may such stores accept food stamp benefits to pay down lines of credit or pay off loans.

5. To participate in the FSP in Michigan, a store owner is required to complete, sign, and submit to the USDA's Food and Nutrition Service (FNS) an FSP Application for Stores (FNS Form 252). The application contains a certification, signed by the store owner, that states that violations of the FSP regulations can lead to criminal prosecution and sets forth as examples of such violations, "Trading cash for food stamp benefits," "Accepting food stamp benefits as payment for ineligible items," and "Accepting food stamp benefits as payment on credit accounts or loans."

### The Issuance and Use of Food Stamp Benefits

6. The Michigan DHS provides eligible food stamp recipients with Electronic Benefit Transfer cards (EBT cards), commonly referred to in Michigan as "Bridge Cards" because the Mackinac Bridge is depicted on the face of the card. The Michigan DHS also provides food stamp recipients with Personal Identification Numbers (PINs), which are to be used with EBT cards.

7. The Michigan DHS issues a specific monthly dollar amount of food stamp benefits to food stamp recipients. These benefits are stored

in a central computer database and are electronically accessed through the use of EBT cards and PINs.

8. Through a third-party processor, the USDA's FNS provides eligible retail food stores with electronic terminals known as point-of-sale (POS) terminals.

9. The purchase of eligible food items with food stamp benefits is accomplished in the following manner:

(a) the food stamp recipient selects eligible food items at a retail food store and presents them at the checkout lane;

(b) the recipient's EBT card is swiped through the POS terminal, which reads the magnetic strip on the back of the EBT card;

(c) the recipient enters his or her PIN into the POS terminal;

(d) the POS terminal communicates electronically with a central computer database, which is maintained by the Michigan DHS and located outside of the State of Michigan, to determine whether sufficient food stamp benefits are available for the purchase;

(e) the central computer database then electronically informs the POS terminal that the purchase is either approved or disapproved

- 4 -

based on the current balance of food stamp benefits in the recipient's account;

(f) if the purchase is approved, the central computer database deducts the purchase price from the recipient's food stamp account and credits the corresponding amount to the retail store's designated bank account;

(g) at least once a day, the central computer database adds up the credits to the retail food store's account and electronically transfers the total amount by wire to the designated bank account of the retail food store.

10. The funds transferred to the bank account of the retail food store are federal funds coming from the United States Treasury.

**Baghdad Mini Mart**

11. Baghdad Mini Mart Inc. (aka Baghdad Market) was a small retail grocery store located at 15337 West Warren Avenue, Dearborn, Michigan. Baghdad Mini Mart was owned and operated by **HAMEED ALZEYADY**. The sign outside of the building read, "Baghdad Market

Grocery-Pizza-Meat." **JABAR AL-ZAYADI** was an employee of Baghdad Mini Mart and the brother of **HAMEED ALZEYADY**.

12. In November 2009, the USDA's FNS authorized Baghdad Mini Mart to accept food stamp benefits based on the submission of an FNS Application for Stores signed by **HAMEED ALZEYADY** on or about October 13, 2009. Thereafter, the FNS, through a third-party processor, provided Baghdad Mini Mart with a POS terminal for the processing of purchases of eligible food items with food stamp benefits.

13. Baghdad Mini Mart maintained a bank account at JPMorgan Chase Bank, NA, account number xxxxxxxxxxx9633, into which food stamp benefits were transferred electronically from the United States Treasury.

## COUNT ONE
(18 U.S.C. § 1343 – Wire Fraud)

D-1 HAMEED ALZEYADY
D-2 JABAR AL-ZAYADI

14. From approximately November 2009 through approximately September 2012, the exact dates being unknown, **HAMEED ALZEYADY**

- 6 -

and **JABAR AL-ZAYADI**, defendants herein, in the Eastern District of Michigan, did knowingly execute and attempt to execute a scheme to defraud the United States and obtain money by means of false and fraudulent pretenses and representations.

15. It was a part of the scheme that Baghdad Mini Mart would accept food stamp benefits from food stamp recipients in exchange for cash. The amount of cash provided to food stamp recipients was roughly 60%-80% of the value of the food stamp benefits acquired and used by Baghdad Mini Mart.

16. It was also a part of the scheme that Baghdad Mini Mart would accept food stamp benefits from food stamp recipients as payment on lines of credit that had been extended to food stamp recipients.

17. It was also a part of the scheme that the EBT cards of food stamp recipients would be swiped through the POS terminal at Baghdad Mini Mart and the corresponding PINs would be entered into the POS terminal as if the food stamp recipients were purchasing eligible food items when in fact they were exchanging food stamp

benefits for cash or using food stamp benefits to pay down lines of credit, as **HAMEED ALZEYADY** and **JABAR AL-ZAYADI** knew.  The POS terminal would then communicate by wire with the central computer database maintained by the Michigan DHS outside of the State of Michigan.

18.  It was also a part of the scheme that **HAMEED ALZEYADY** and **JABAR AL-ZAYADI** would cause the EBT cards of food stamp recipients, which they obtained by the payment of cash, to be swiped through POS terminals at other food stores.  **HAMEED ALZEYADY, JABAR AL-ZAYADI,** and others acting under their direction would obtain food items and other goods from the other food stores by using the EBT cards that they obtained with cash from the customers of Baghdad Mini Mart.

19.  It was also a part of the scheme that federal funds representing food stamp benefits would be transferred by wire from the federal government to the bank account of Baghdad Mini Mart at JPMorgan Chase Bank, NA, account number xxxxxxxxxx9633, and to the bank accounts of the other food stores.

20. It was also a part of the scheme that **HAMEED ALZEYADY** and **JABAR AL-ZAYADI** and Baghdad Mini Mart would financially benefit from the scheme.

21. On or about August 22, 2011, **HAMEED ALZEYADY** and **JABAR AL-ZAYADI**, defendants herein, for the purpose of executing the scheme to defraud the United States and obtain money by means of false and fraudulent pretenses and representations, did knowingly cause funds in the amount of $239.99 to be electronically transferred from an account of the United States Treasury at a Federal Reserve Bank, which was located outside of Michigan, to the account of Baghdad Mini Mart at JPMorgan Chase Bank, NA, account number xxxxxxxxxx9633, located in the Eastern District of Michigan, all in violation of Section 1343 of Title 18 of the United States Code.

### COUNTS TWO – TEN
(18 U.S.C. § 1343 – Wire Fraud)

D-1   HAMEED ALZEYADY
D-2   JABAR AL-ZAYADI

22. On or about the following dates, **HAMEED ALZEYADY** and **JABAR AL-ZAYADI**, defendants herein, for the purpose of executing the

scheme to defraud the United States and obtain money by means of false and fraudulent pretenses and representations, did knowingly cause funds in the following amounts to be electronically transferred from an account of the United States Treasury at a Federal Reserve Bank, which was located outside of Michigan, to the bank accounts of the following food stores , located in the Eastern District of Michigan, all in violation of Section 1343 of Title 18 of the United States Code.

| Count | Date | Amount | Food Store |
|---|---|---|---|
| 2 | November 27, 2011 | $255.47 | Sahara West Market |
| 3 | December 2, 2011 | $235.00 | Sahara West Market |
| 4 | December 16, 2011 | $470.00 | Salam Food Center |
| 5 | January 19, 2012 | $350.12 | Berry & Sons |
| 6 | March 2, 2012 | $344.99 | Baghdad Mini Mart |
| 7 | March 5, 2012 | $230.86 | Salam Food Center |
| 8 | May 20, 2012 | $400.65 | Salam Food Center |
| 9 | July 21, 2012 | $330.10 | New Salam Supermarket |
| 10 | July 22, 2012 | $222.28 | Salam Food Center |

## COUNT 11
### (7 U.S.C. § 2024(b) – Food Stamp Fraud)

D-1  HAMEED ALZEYADY
D-2  JABAR AL-ZAYADI

23.  From approximately November 2009 to approximately September 2012, in the Eastern District of Michigan, Southern Division, **HAMEED ALZEYADY** and **JABAR AL-ZAYADI**, defendants herein, did knowingly acquire and use food stamp benefits having a value of over $5,000.00 in a manner contrary to federal law, in violation

of Section 2024(b) of Title 7 of the United States Code.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
*Grand Jury Foreperson*

BARBARA L. MCQUADE
*United States Attorney*

s/ Cynthia Oberg
CYNTHIA OBERG
*Assistant United States Attorney*
Chief, White Collar Crime Unit
211 West Fort Street, Suite 2001
Detroit, Michigan   48226-3220
phone:  313-226-9701
e-mail:  cynthia.oberg@usdoj.gov

s/Stephen L. Hiyama
STEPHEN L. HIYAMA
*Assistant United States Attorney*
211 West Fort Street, Suite 2001
Detroit, Michigan   48226-3220
phone:  313-226-9674
e-mail:  stephen.hiyama@usdoj.gov
bar no.:  P32236

Date:  April 10, 2014

- 12 -

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | **Case Number** |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   [  ]

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes      ☒ No | **AUSA's Initials:** SL H |

**Case Title:** USA v. D-1 HAMEED ALZEYADY et al.

**County where offense occurred :** Wayne

**Check One:**      ☒ Felony          ☐ Misdemeanor          ☐ Petty

____Indictment/____Information --- **no** prior complaint.
✓ Indictment/____Information --- based upon prior complaint [**Case number:** 12-MJ-30568      ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____      **Judge:** _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

April 10, 2014
_____
Date

Stephen L. Hiyama
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9674
Fax:    313-226-0816
E-Mail address: stephen.hiyama@usdoj.gov
Attorney Bar #: 32236

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.      04/13